# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75168-9-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| JAI'MAR SCOTT, | ) | PUBLISHED OPINION |
| Respondent. | ) ) | FILED: December 5, 2016 |

SPEARMAN, J. — In Miller v. Alabama, __ U.S. __, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the United States Supreme Court determined that a sentence of life without parole is unconstitutional for most juvenile offenders. Prior to Miller, Jai'Mar Scott received a de facto life sentence for a crime he committed as a juvenile. Scott filed a motion for relief from judgment, arguing that Miller mandated resentencing. The trial court granted Scott's motion and ordered a new sentencing date. But because Washington's Miller fix statute, RCW 9.94A.730, provides the opportunity for parole and cures any Miller violation, we reverse.

## FACTS

A jury convicted Scott of brutally murdering his neighbor, a 78 year old woman who suffered from Alzheimer's disease. Scott was 17 years old at the time of the murder.

At sentencing, the parties agreed that the mandatory minimum sentence was 240 months and the standard range was 240 to 320 months. Scott argued for a sentence at the low end of the standard range based, in part, on his youth. The State requested an exceptional sentence of 1,028 months based on several aggravating factors. The sentencing court found four aggravating factors: deliberate cruelty, multiple injuries, particular vulnerability, and abuse of trust. The court imposed an exceptional sentence of 900 months.

Scott appealed his sentence to this court. State v. Scott, 72 Wn. App. 207, 866 P.2d 1258 (1993). He asserted, among other arguments, that his age was a mitigating factor that rendered the exceptional sentence improper. Id. at 218. We rejected the argument as "border[ing] on the absurd" and affirmed. Id. The Supreme Court also upheld Scott's sentence. State v. Ritchie, 126 Wn.2d 388, 399, 894 P.2d 1308 (1995).The court held that the "four horrid aggravating factors" demonstrated that the trial court did not abuse its discretion in imposing the exceptional sentence. Id.

In 2016, Scott filed a CrR 7.8 motion for relief from judgment, asserting that Miller, 132 S. Ct. 2455, announced a significant change in law concerning the sentencing of juvenile offenders. Scott contended that this change in the law allowed him to challenge his sentence despite the general one year time bar on collateral attacks. The trial court granted Scott's motion and ordered a new sentencing hearing. The State appeals.

## DISCUSSION

The State contends that the trial court erred in granting Scott's motion for relief from judgment and ordering a new sentencing hearing. The State asserts that Scott's motion was untimely and should have been transferred to this court for consideration as a personal restraint petition.

A collateral attack must generally be brought within one year after the judgment becomes final. RCW 10.73.090(1). When a defendant files an untimely motion to challenge his sentence, the motion must be transferred to this court for consideration as a personal restraint petition. State v. Flaherty, 177 Wn.2d 90, 92-93, 296 P.3d 904 (2013). An exception to the one year time bar exists when there has been (1) a significant change in the law (2) that is material to the order being challenged and (3) applies retroactively. RCW 10.73.100(6).

The parties agree that Miller constitutes a significant change in the law that applies retroactively. The only point at issue is whether the change in law is material to Scott's sentence. Whether the Miller line of cases announced a change in law that is material to Scott's sentence is a question of law that we review de novo. Ameriquest Mortg. Co. v. Office of Attorney Gen. of Washington, 177 Wn.2d 467, 478, 300 P.3d 799 (2013) (citing State v. Willis, 151 Wn.2d 255, 261, 87 P.3d 1164 (2004)).

The United States Supreme Court has considered the sentencing of juvenile offenders in four recent cases. In 2005, the Supreme Court held the death penalty unconstitutional for juvenile offenders in Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). The Roper court relied on

3

research indicating that juveniles are different from adults because of their immaturity, susceptibility to outside pressures, and unformed character. Id. at 569-70. These differences mean that the two justifications for the death penalty, retribution and deterrence, apply with less force to a juvenile than to an adult. Id. at 571-72. The Roper court held that imposing the death penalty on a juvenile is disproportionate and constitutes cruel and unusual punishment. Id. at 578.

In 2010, the Supreme Court considered life without parole for juveniles convicted of nonhomicide crimes in Graham v. Florida, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Relying on Roper, the Graham court noted that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds." Id. at 68. In particular, a juvenile is more capable of change than an adult. Id. The Graham court held that, while a juvenile offender may serve life behind bars, the Eighth Amendment prohibits states from determining at the outset that a juvenile offender will never be fit to reenter society. Id. at 75. States must provide "'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" Id.

Next, in 2012, the Supreme Court considered mandatory sentencing schemes as applied to juveniles in Miller. In a sentencing scheme that mandates life without parole, the trial court has no discretion to consider the defendant's age and maturity, the specific circumstances of the crime, or the possibility of rehabilitation. Id. at 2467. Relying on Graham and Roper, the Miller court declared mandatory life without parole unconstitutional for juvenile offenders. Id. at 2463-64. The Miller court stated that the sentencing court must "take into

4

account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 2469. (Footnote omitted).

In response to the Miller decision, the Washington legislature enacted RCW 9.94A.730 as a statutory "Miller fix" in 2014. See State v. Ronquillo, 190 Wn. App. 765, 778, 361 P.3d 779 (2015) (discussing statute). Under the statute, an offender who committed crimes as a juvenile may petition the indeterminate sentence review board (ISRB) for early release after serving at least twenty years. RCW 9.94A.730(1). Early release is presumptive. RCW 9.94A.730(3). To deny the petition, the ISRB must determine that the offender is more likely than not to reoffend. Id.

The Washington Supreme Court also acted in response to Miller. In 2015, the Supreme Court considered age as a mitigating factor in State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015). In that case, an 18-year-old defendant was convicted of second degree rape of a child. Id. at 683. The defendant requested an exceptional sentence based on his age and immaturity. Id. at 685. The sentencing court determined that it could not consider the defendant's age as a mitigating factor and imposed a standard range sentence. Id. at 686. Relying on the line of United States Supreme Court cases discussed above, our Supreme Court overturned O'Dell's sentence and remanded for resentencing. Id. at 699.

The O'Dell court noted that, prior to the Miller line of cases, courts did not have the benefit of studies proving that there are fundamental differences between juvenile and adult brains. Id. at 691-92. As an example of the law's

5

previous faulty understanding, the O'Dell court quoted this court's opinion in Scott's direct appeal. Id. at 694-95. Scott argued that his age at the time of the crime limited his capacity to understand the wrongfulness of his conduct. Id. at 694. We rejected the argument as "'border[ing] on the absurd.'" Id. (quoting Scott, 72 Wn. App. at 218). According to the O'Dell court, our decision in Scott reflected the reasoning that youth could not mitigate culpability. Id. at 695. Because that reasoning has been disproven by the scientific studies underlying the Miller line of cases, the O'Dell court held that "a trial court must be allowed to consider youth as a mitigating factor. . . ." Id. at 696.

A few months after O'Dell, this court applied Miller to de facto life sentences. Ronquillo, 190 Wn. App. at 768-69. In Ronquillo, a juvenile was convicted of multiple offenses including murder. Id. at 769. At sentencing, the juvenile argued for an exceptional sentence downward based on Miller and based on the excessive nature of the aggregate sentence. Id. at 773. The sentencing court found that Miller did not apply because the sentence at issue was not mandatory life without parole. Id. at 773-74. The sentencing court also concluded that age could not be considered as a basis for finding the aggregate sentence excessive. Id. The court imposed the bottom of the standard range for each count, resulting in a sentence of 621 months to be served consecutively. Id. at 769-70.

On appeal, this court relied on O'Dell to hold that the trial court erred in concluding that it could not consider age as a basis for an exceptional sentence. Id. at 783. We also held that Ronquillo's aggregate sentence was a de facto life

without parole sentence to which Miller applied. Id. at 774-75. Relying on the Miller line of cases, the Ronquillo court stated that "[b]efore imposing a term-of-years sentence that is the functional equivalent of a life sentence for crimes committed when the offender was a juvenile, the court must 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" Id. at 775 (quoting Miller, 132 S. Ct. at 2469). Because the trial court erroneously believed that Miller did not apply and that age could not be considered as a basis for an exceptional sentence, we remanded for a new sentencing hearing.[1] Id. at 783-85.

Finally, in Montgomery v. Louisiana, __ U.S. __, 136 S. Ct. 718, 736, 193 L. Ed. 2d 599 (2016), the United States Supreme Court considered whether Miller applied retroactively. The Montgomery court summarized Miller by stating that "life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" Id. at 734 (quoting Miller, 132 S. Ct. at 2469). Accordingly, life without parole is an unconstitutional penalty for "'juvenile offenders whose crimes reflect the transient immaturity of youth.'" Id. (quoting Penry v. Lynaugh, 492 U.S. 302, 305, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989) abrogated by Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335

---

[1] The State asserts that in Ronquillo we held that the statutory Miller fix, RCW 9.94A. 730, did not cure a Miller violation and that the holding was later overruled by Montgomery v. Louisiana, __ U.S. __, 136 S. Ct. 718, 736, 193 L. Ed. 2d 599 (2016). The State misapprehends our holding in Ronquillo. There, we held that the Miller fix statute did not apply in the circumstances of that case. Ronquillo, 190 Wn. App. at 778. Due to a sentencing error, Ronquillo was returned to the trial court for resentencing post-Miller. Id. But at resentencing, the trial court mistakenly believed that it could not apply Miller. Id. at 779. We concluded that this was an error "not contemplated by the Miller fix." Id. at 786.

7

(2002)). The Court concluded that "[a]s a result, Miller announced a substantive rule of constitutional law[]" that applies retroactively. Id.

But the Montgomery court also held that applying Miller retroactively "does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole." Id. at 736. A Miller violation may be remedied "by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." Id. The Montgomery court noted with approval Wyoming's Miller fix statute, under which juveniles sentenced to life are eligible for parole after serving 25 years. Id. Allowing juvenile offenders the opportunity for parole "ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Id.

In this case, the State argues that the change in law announced in Miller is not material to Scott's sentence because there was no Miller violation or, alternatively, any violation was cured by the statutory Miller fix. The State first asserts that Miller is not material because that case addressed mandatory life without parole for juvenile offenders. The State contends that, because Scott's exceptional sentence was not mandatory but was an exercise of the trial court's discretion, there was no Miller violation. We disagree.

Miller specifically addressed sentencing schemes that mandate life without parole and held such schemes unconstitutional for juvenile offenders. Miller, 132 S. Ct. at 2460. But later case law indicates that Miller's holding is not limited to

8

mandatory sentencing schemes. In Montgomery, the court observed that, before sentencing a juvenile to life without parole, Miller requires that "the sentencing judge take into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" Montgomery, 136 S. Ct. at at 733 (quoting Miller, 132 S. Ct. at 2469). "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" Id. at 734 (internal quotation marks omitted). Thus, Montgomery clearly indicates that life without parole is unconstitutional for most juveniles, whether imposed under a mandatory or a discretionary sentencing scheme.

The State does not dispute that Scott received a de facto life sentence. And because it is clear, after O'Dell, that Scott's sentencing judge did not meaningfully consider Scott's age as a mitigating factor, the sentence imposed falls squarely within the constitutional concerns expressed in Miller. Accordingly, we reject the State's argument that Miller is immaterial because Scott's sentence was not the result of a mandatory sentencing scheme.

The State next asserts that Miller is immaterial because, if the sentencing court failed to adequately consider Scott's youth, any violation has been cured through Washington's Miller fix statute. Scott contends that Miller requires resentencing despite the Miller fix statute. We agree with the State.

The constitutional violation identified in the Miller line of cases is the failure to allow a juvenile offender the opportunity for release when his or her crime was

the result of youthful traits. Miller held that the Eighth Amendment prohibits mandatory "life in prison without possibility of parole for juvenile offenders." Miller, 132 S.Ct. at 2469. Similarly, the Graham court held that juveniles convicted of nonhomicide crimes must have "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham, 560 U.S. at 75. And the Montgomery court held that the opportunity for parole "ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence. . . ." Montgomery, 136 S. Ct. at 736. In Montgomery, the Supreme Court expressly approved of statutes that provide the opportunity for parole as remedies for a Miller violation. Id.

The Montgomery court noted with approval the Wyoming Miller fix statute. Id. Under that statute, a juvenile sentenced to life imprisonment is eligible for parole after serving 25 years, provided that he has not committed any disqualifying offenses since reaching 18 years of age. Wyo. Stat. Ann. § 6-10-301(c) (2013). Under Washington's Miller fix statute, a juvenile offender is presumptively eligible for early release after serving no less than 20 years. RCW 9.94A.730. An offender may not petition for early release if he has been convicted of a crime committed after his eighteenth birthday or has committed a disqualifying infraction in the twelve previous months.[2] RCW 9.94A.730(1). Washington's Miller fix statute is substantially similar to the Wyoming statute

---

[2] Scott petitioned for early release under RCW 9.94A.730 in 2015. The State asserts that the ISRB denied Scott's petition and that he may petition again in 2019. Scott does not address his petition.

expressly approved by the <u>Montgomery</u> court. We conclude that Washington's <u>Miller</u> fix statute, like Wyoming's, remedies a <u>Miller</u> violation.

At oral argument, however, Scott asserted that <u>Miller</u> requires the sentencing court to make an individualized determination considering the offender's youth and make a finding of irreparable incorrigibility before sentencing a juvenile to life without parole. Failure to meet either of these requirements, he argued, mandates resentencing. But <u>Montgomery</u> expressly holds that the opportunity for parole cures a <u>Miller</u> violation. <u>Montgomery</u>, 136 S. Ct. at 736 ("A State may remedy a <u>Miller</u> violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."). We reject Scott's argument.

We conclude that the trial court erred in granting Scott's motion for relief from judgment. Scott's motion was only timely if it was based on a significant change in the law that was material to his sentence. But under <u>Montgomery</u>, as a result of the statutory <u>Miller</u> fix, Scott is no longer serving a sentence that is the equivalent of life without parole. As such, <u>Miller</u> is not a significant change in law that is material to his sentence.

Reversed.

Spearman, J.

WE CONCUR:

Appelwick, J.

Becker, J.

11