# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Personal Restraint of

KEVIN LIGHT-ROTH,

Petitioner.

)
)
)
)
)
)
)
)
)
)
)

No. 75129-8-I

DIVISION ONE

PUBLISHED OPINION

FILED: August 14, 2017

TRICKEY, A.C.J. — In this personal restraint petition, Kevin Light-Roth challenges his sentence for his 2004 conviction of murder in the second degree. He argues that his sentence is invalid because the trial court did not meaningfully consider whether his youthfulness justified an exceptional sentence below the standard range.

Although this is Light-Roth's second petition and is beyond the one-year time bar for collateral attacks on the judgment, he argues that we may consider it because of a significant change in the law. He contends that the recent Supreme Court decision in State v. O'Dell significantly broadened the circumstances under which a defendant's youthfulness may justify an exceptional sentence below the standard range. 183 Wn.2d 680, 695-96, 358 P.3d 359 (2015).

The State responds that O'Dell is not a significant change in the law because the court did not overrule its decision in State v. Ha'mim. O'Dell, 183 Wn.2d at 685 (citing Ha'mim, 132 Wn.2d 834, 847, 940 P.2d 633 (1997)). In O'Dell, the court said there was a "clear connection between youth and decreased moral culpability for criminal conduct." 183 Wn.2d at 695. But in Ha'mim, the court stated that the "age of the defendant does not relate to the crime or the previous

record of the defendant," and cited with approval a Court of Appeals decision characterizing as absurd the argument that a defendant's youth might justify imposing a more lenient sentence. 132 Wn.2d at 846-47 (citing State v. Scott, 72 Wn. App. 207, 218-19, 866 P.2d 1258 (1993), aff'd, State v. Ritchie, 126 Wn.2d 388, 894 P.2d 1308 (1995)).

Accordingly, we hold that O'Dell expanded youthful defendants' ability to argue for an exceptional sentence, and was a significant change in the law. Because that change in the law was material to Light-Roth's sentence and applies retroactively, we may consider Light-Roth's petition. We conclude that Light-Roth deserves an opportunity to have a sentencing court meaningfully consider whether his youthfulness justifies an exceptional sentence below the standard range. Therefore, we grant Light-Roth's petition.

## FACTS

In 2003, when he was 19 years old, Light-Roth shot and killed Tython Bonnett.[1]

In 2004, Light-Roth was convicted of murder in the second degree.[2] Light-Roth asked for a low- or mid-range sentence. He pointed out that he was only 21 years old at the time of sentencing, but he did not seek an exceptional sentence downward on the basis of his youthfulness at the time of the murder. The trial court imposed the maximum standard range sentence of 335 months.[3]

---

[1] State v. Light-Roth, noted at 139 Wn. App. 1093, 2007 WL 2234613, at *1. Unless otherwise specified, all references to ages of various defendants are to the ages at which those defendants committed their crimes.
[2] Light-Roth, 2007 WL 2234613 at *5.
[3] The sentence includes a 60-month mandatory sentence enhancement for use of a deadly weapon. Light-Roth was also convicted of unlawful possession of a firearm. The court

In 2008, this court issued its mandate in Light-Roth's direct appeal, and the judgment in his case became final.

In 2009, Light-Roth brought his first personal restraint petition, alleging numerous errors, none of which related to his sentence or youthfulness. In 2010, this court dismissed that petition.

In 2015, the Supreme Court issued its opinion in O'Dell. 183 Wn.2d 680.

In 2016, Light-Roth filed this second personal restraint petition, challenging his sentence.

## ANALYSIS

### Timeliness

The State argues that this court should dismiss Light-Roth's petition as untimely because Light-Roth filed it more than one year after the judgment in his case became final. While this petition would normally be untimely, we hold that we may consider it because of O'Dell, which announced a significant, material change in the law that applies retroactively.

"No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). A judgment becomes final when an appellate court issues its mandate disposing of the direct appeal. RCW 10.73.090(3)(b).

But there are exceptions to the one-year time limit. RCW 10.73.100. The

imposed slightly less than the maximum standard range for Light-Roth's conviction for that charge.

one-year limit does not apply to a petition that is based solely on the ground that there has been (1) a significant change in the law, (2) that is material to the defendant's sentence, and (3) applies retroactively. RCW 10.73.100(6).[4]

Here, Light-Roth's sentence became final in 2008. He filed this petition in 2016. Therefore, he may pursue this petition only if he can satisfy all three prongs of RCW 10.73.100(6). We conclude that he can.

*Significant Change in the Law*

Light-Roth argues that O'Dell announced a significant change in the law because it changed "the law regarding the evidence that is relevant to decreased culpability" and changed the showing required to merit a sentencing court's consideration of an offender's youth.[5] The State argues that O'Dell did not announce a significant change in the law because it did not overrule established precedent. We agree with Light-Roth because defendants could not successfully argue that their youth diminished their culpability before O'Dell.

A significant change in the law occurs when "an intervening appellate decision overturns a prior appellate decision that was determinative of a material issue." State v. Miller, 185 Wn.2d 111, 114, 371 P.3d 528 (2016). An appellate decision that "'settles a point of law without overturning prior precedent' or 'simply applies settled law to new facts'" does not constitute a significant change in the law. Miller, 185 Wn.2d at 114-15 (quoting In re Pers. Restraint of Turay, 150 Wn.2d 71, 83, 74 P.3d 1194 (2003)). But appellate courts will usually find a significant

---

[4] There are several other exceptions to the time limit, which are not relevant to this petition. RCW 10.73.100(1)-(5).
[5] Personal Restraint Petition (PRP) at 5.

4

change in the law when the defendant could not have argued an issue before the new appellate decision was published. Miller, 185 Wn.2d at 115. The change must be a change in the law itself; a change in counsels' understanding of the law is not enough. Miller, 185 Wn.2d at 116.

In State v. Miller, the court held that State v. Mulholland had not announced a significant change in the law because, there, the court stated explicitly that the question it was confronted with was "'a question [it had] not directly addressed.'" 185 Wn.2d at 116 (quoting Mulholland, 161 Wn.2d 322, 328, 166 P.3d 677 (2007)).

In In re the Personal Restraint of Flippo, Earl Flippo petitioned the Supreme Court to review the discretionary legal financial obligations (LFOs) imposed on him, arguing that there had been a significant change in the law since his sentence. 187 Wn.2d 106, 108, 385 P.3d 128 (2016) (citing State v. Blazina, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015) (holding that the trial court must make an "individualized inquiry into the defendant's current and future ability to pay" before imposing discretionary LFOs and that the record must reflect that inquiry)). The court dismissed Flippo's petition because it concluded that Blazina had clarified the trial court's requirements under RCW 10.01.160(3) but had not "change[d] anything about the meaning of that statue or any other material provision of law." Flippo, 187 Wn.2d at 112. The court reasoned that, "prior to Blazina, a defendant could certainly request that the court perform an individualized inquiry pursuant to the statute." Flippo, 187 Wn.2d at 112.

Flippo argued that such a request would have been "futile" because controlling precedent established that the trial court did not need to "'enter formal,

specific findings regarding a defendant's ability to pay.'" Flippo, 187 Wn.2d at 112-13 (quoting State v. Curry, 118 Wn.2d 911, 916, 829 P.2d 166 (1992)). The court rejected Flippo's argument, holding that, although Blazina explained what the trial court was required to do, "nothing about those requirements changed with Blazina." Flippo, 187 Wn.2d at 113. The court acknowledged that some practitioners had had a mistaken understanding of the law, but nevertheless, held that there was no significant change in the law. Flippo, 187 Wn.2d at 113.

Here, the parties dispute whether O'Dell announced a change in the interpretation of the mitigating factors justifying an exceptional sentence below the standard range under the Sentencing Reform Act of 1981, chapter 9.94A RCW (SRA). The court may impose a sentence below the standard range when the "defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired." RCW 9.94A.535(1)(e).

The court may also impose an exceptional sentence on the basis of a nonstatutory mitigating factor. RCW 9.94A.535(1). The factor may not be something that "the legislature *necessarily* considered" when establishing the sentence range and it must be "'sufficiently substantial and compelling to distinguish the crime in question from others in the same category." O'Dell, 183 Wn.2d at 690 (quoting Ha'mim, 132 Wn.2d at 840).

In 1993, in State v. Scott, the Court of Appeals rejected as bordering "on the absurd" an argument that a 17-year-old murder defendant's youth lessened his

culpability.[6] 72 Wn. App. at 218-19. The court acknowledged that "teenagers are more impulsive than adults and lack mature judgment," but stated that "[p]remediated murder is not a common teenage vice." Scott, 72 Wn. App. at 219.

In 1997, in State v. Ha'mim, an 18-year-old defendant requested an exceptional sentence below the standard range on the basis of her youth and her absence of police contacts. 132 Wn.2d 834, 837, 940 P.2d 633 (1997). The trial court imposed the exceptional sentence downward, relying on the defendant's youth as a mitigating factor. Ha'mim, 132 Wn.2d at 838.

The Supreme Court reversed. Ha'mim, 132 Wn.2d at 848. It declined "to hold that age alone may be used as a factor to impose an exceptional sentence outside of the standard range." Ha'mim, 132 Wn.2d at 846. The court noted that age "could be relevant" to the statutory mitigating factor that the defendant's capacity to appreciate the wrongfulness of her conduct or conform her behavior to the law was impaired. Ha'mim, 132 Wn.2d at 846. But the court noted that the trial court had made "no such finding." Ha'mim, 132 Wn.2d at 846.

The court also stated that age alone could not be a nonstatutory mitigating factor. Ha'mim, 132 Wn.2d at 847. The court held that "the age of a young adult defendant is not alone" a "substantial and compelling" factor. Ha'mim, 132 Wn.2d at 847. It also held that the "age of the defendant does not relate to the crime or the previous record of the defendant." Ha'mim, 132 Wn.2d at 847.

In 2005, in State v. Law, the Supreme Court engaged in a detailed

---

[6] The defendant was challenging the trial court's imposition of an exceptional sentence *above* the standard range, but cited statutes for mitigating factors justifying a sentence below the standard range, specifically former RCW 9.94A.390(1)(e) (1992) (recodified as RCW 9.94A.535(1)(e)). Scott, 72 Wn. App. at 218-19.

discussion of what may constitute a nonstatutory factor justifying a sentence below the standard range. 154 Wn.2d 85, 94-98, 110 P.3d 717 (2005). The court explained that it had "rejected the use of age as a mitigating factor" in Ha'mim. Law, 154 Wn.2d at 98. The court quoted Ha'mim's conclusion that the defendant's age does not relate to the crime or record of the defendant. Law, 154 Wn.2d at 98 (quoting Ha'mim, 132 Wn.2d at 847). The court went on to state that, in Ha'mim, it had held "that this personal factor was not a substantial and compelling reason to impose an exceptional sentence." Law, 154 Wn.2d at 98.

A decade later, in O'Dell, the Supreme Court revisited "the same question" it had considered in Ha'mim. 183 Wn.2d at 689. It determined that Ha'mim had correctly held that courts may not impose an exceptional sentence on the basis of youth unless there is evidence "that youth in fact diminished a defendant's culpability." O'Dell, 183 Wn.2d at 689. But the court noted that, in Ha'mim, it had not had the benefit of studies about "adolescents' cognitive and emotional development," which have since established "a clear connection between youth and decreased moral culpability for criminal conduct." O'Dell, 183 Wn.2d at 695.[7]

Accordingly, the Supreme Court disapproved of its earlier, "sweeping conclusion" that "'[t]he age of the defendant *does not relate to the crime* or the previous record of the defendant.'" O'Dell, 183 Wn.2d at 695 (alteration in original) (quoting Ha'mim, 132 Wn.2d at 847). The court held that, while "age is not a per

---

[7] The studies the court relied on were essential to the United States Supreme Court's decisions in Roper v. Simmons, 543 U.S. 551, 569-70, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); Graham v. Florida, 560 U.S. 48, 71, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); and Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 2465, 183, L. Ed. 2d 407 (2012). O'Dell, 183 Wn.2d at 685, 691, 695.

se mitigating factor," it was "far more likely to diminish a defendant's culpability than" the court had implied in Ha'mim. O'Dell, 183 Wn.2d at 695-96. The court concluded that "in particular cases" youth could amount to a substantial and compelling factor justifying a sentence below the standard range. O'Dell, 183 Wn.2d at 696. The court explicitly disavowed any reasoning in Ha'mim that was inconsistent with its opinion. O'Dell, 183 Wn.2d at 696.

When describing how the defendant might be able "to establish that youth diminished his capacities for purposes of sentencing," the court explained that the defendant would not need to present expert testimony. O'Dell, 183 Wn.2d at 697. The court cited examples from the record of the type of "lay testimony that a trial court should consider," including family member depictions of the defendant as an "'immature kid,'" descriptions of the defendant's hobbies, including hiking and playing video games, and the way he interacted with his family. O'Dell, 183 Wn.2d at 697-98. All of the examples related to the defendant's immaturity, rather than the specific circumstances of his crime or criminal record. O'Dell, 183 Wn.2d at 697-98.

This court has not yet considered whether O'Dell announced a significant change in the law for purposes of personal restraint petitions. But, in State v. Ronquillo, this court recognized that O'Dell has impacted the use of youth as a mitigating factor. 190 Wn. App. 765, 780-83, 361 P.3d 779 (2015).

In that case, Brian Ronquillo, a minor defendant who had been sentenced in adult court, sought an exceptional sentence based on his youthfulness, relying

on research on juvenile brain development.[8] Ronquillo, 190 Wn. App. at 773-74. The trial court found the evidence "'incredibly compelling'" but, after reviewing Ha'mim and Law, refused to grant the exceptional sentence. 190 Wn. App. at 773-74. The trial court explained that it felt "'constrained'" by the law. Ronquillo, 190 Wn. App. at 773-74. As the Court of Appeals explained, at the time of Ronquillo's sentencing, his "youthfulness was not, by itself, a mitigating factor that could justify a downward departure." Ronquillo, 190 Wn. App. at 771 (citing Law, 154 Wn.3d at 97-98; Ha'mim, 132 Wn.2d at 847).

But, while Ronquillo's appeal to this court was pending, the Supreme Court issued its opinion in O'Dell.[9] This court concluded that O'Dell had "significantly revised the interpretation of Ha'mim relied on by the trial court." Ronquillo, 190 Wn. App. at 780-81. Noting that O'Dell did not "'overrule Ha'mim,'" the Court of Appeals nevertheless concluded that, following O'Dell, trial courts may consider age "'as a possible mitigating factor.'" Ronquillo, 190 Wn. App. at 783 (quoting O'Dell, 183 Wn.2d at 689).

Ronquillo demonstrates that, until O'Dell, defendants could not meaningfully argue that youthfulness was a mitigating factor under RCW 9.94A.535(1)(e) or as a nonstatutory mitigating factor. O'Dell did not technically overrule Ha'mim, but the court notes it was addressing the same question it had already addressed in Ha'mim, and it came to a different conclusion. It would be

---

[8] This was a resentencing. The court had already remanded the case once for a new sentencing hearing because the defendant's original sentence relied on a miscalculation of Ronquillo's offender score. Ronquillo, 190 Wn. App. at 770-71.
[9] Ronquillo's resentencing was on March 21, 2004. Ronquillo, 190 Wn. App. at 773. O'Dell was decided on August 13, 2015. 183 Wn.2d at 680. Ronquillo was decided by this court on October 26, 2015. 190 Wn. App. at 765.

disingenuous to suggest that O'Dell merely clarified Ha'mim's holding or applied settled law to new facts.

Law and Ha'mim together effectively prevented trial courts from considering whether a young adult defendant's age diminished his or her culpability unless something else tied the defendant's youth to the crime itself. Under O'Dell, trial courts are allowed to consider the defendant's youth and immaturity. In short, O'Dell approved of the argument that the earlier cases characterized as absurd. Thus, unlike Flippo, Light-Roth could not "certainly request" an exceptional sentence based on his youth. Flippo, 187 Wn.2d at 112. Accordingly, we conclude that O'Dell announced a significant change in the law.

*Applied Retroactively*

"Whether a changed legal standard applies retroactively is a distinct inquiry from whether there has been a significant change in the law." In re Pers. Restraint of Tsai, 183 Wn.2d 91, 103, 351 P.3d 138 (2015). We conclude that O'Dell should be applied retroactively because it announced a new interpretation of the SRA.

"Once the Court has determined the meaning of a statute, that is what the statute has meant since its enactment." In re Pers. Restraint of Johnson, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997). Accordingly, that meaning applies retroactively. See Johnson, 131 Wn.2d at 568; see also In re Pers. Restraint of Hinton, 152 Wn.2d 853, 859-60, 100 P.3d 801 (2004).

O'Dell announced a change in the interpretation of the SRA, specifically RCW 9.94A.535(1) and RCW 9.94A.535(1)(e).[10] 183 Wn.2d at 694-96. Because

---

[10] In O'Dell, the court relies on studies cited in United States Supreme Court cases discussing evolving standards for the treatment of juveniles under the Eight Amendment,

11

the SRA is a statute, courts should apply this new interpretation retroactively.

*Material to Sentence*

Light-Roth argues that the change in the law announced in O'Dell is material to his sentence because he was only 19 years old when he committed his crime and because his crime bears many hallmarks of immaturity. The State argues that, even if O'Dell announced a significant change in the law, it is not material to Light-Roth's sentence because Light-Roth did not seek an exceptional sentence downward based on his youth.

It is unreasonable to hold that a case announced a significant change because it made a new argument available to a defendant, and then hold that the change is not material because the defendant did not make that argument. We conclude that the change in the law O'Dell announced was material to Light-Roth's sentence because, under O'Dell, Light-Roth can now argue that his youth justified an exceptional sentence below the standard range.

To qualify for the exception to the one-year time bar, the change in the law must be material to the defendant's sentence. RCW 10.73.100(6). In State v. Scott, the court addressed whether Miller, which held "that a sentence of life without parole is unconstitutional for most juvenile offenders," was material to the sentence of a juvenile defendant who had received a de facto life sentence. 196 Wn. App. 961, 963, 385 P.3d 783 (2016), review granted, No. 94020-7, 2017 WL 1736726 (Wash. May 3, 2017). The parties agreed that Miller had announced a

---

but O'Dell does not base its departure from Ha'mim on Eighth Amendment grounds. See 183 Wn.2d at 695 (citing Miller, 567 U.S. 460; Roper, 543 U.S. 551; Graham, 560 U.S. 48).

significant change in the law and that it applied retroactively. Scott, 196 Wn. App. at 965.

The State argued that Miller was not material to the defendant's sentence because the trial court had imposed the sentence as an exercise of discretion, not as a result of a mandatory scheme. Scott, 196 Wn. App. at 970. The Court of Appeals disagreed, holding that because the sentencing judge "did not meaningfully consider [the defendant's] age as a mitigating factor," the defendant's sentence fell "squarely within the constitutional concerns expressed in Miller." Scott, 196 Wn. App. at 970.

But the State also argued that Miller was not material to the defendant's sentence because any violation had been cured by the legislature's passage of a Miller-fix statute. Scott, 196 Wn. App. at 970-71. Under the Miller-fix statute, "a juvenile offender is presumptively eligible for early release after serving no less than 20 years." Scott, 196 Wn. App. at 971 (citing RCW 9.94A.730). The court agreed with the State, holding that Miller was not material to the defendant's sentence because, under the Miller-fix statute, the defendant was "no longer serving a sentence that is the equivalent of life without parole." Scott, 196 Wn. App. at 971-72.

By contrast, in In re Pers. Restraint of Rowland, the court held that a change in how the court compares convictions from other states was material to a petitioner's conviction because it led to a miscalculation of the petitioner's offender score, even though the trial court imposed an exceptional sentence above the standard range. 149 Wn. App. 496, 507, 204 P.3d 953 (2009).

13

Here, Light-Roth received the maximum standard range sentence for his conviction of murder in the second degree. He was only 19 years old at the time he committed the offense. Light-Roth's actions immediately following his arrest, including attempting to escape via the ceiling of his interrogation room, demonstrate impulsivity and immaturity.[11]

Further, Light-Roth's mother declared that, as a 19-year-old, Light-Roth "still continued to exhibit substantial impulsivity and a limited ability to manage his behavior by thinking through the consequences of his actions and by being drawn to risky and exciting behaviors."[12] Light-Roth's cousin declared that Light-Roth was "stunted socially and emotionally due to unintentional neglect," and that Light-Roth was a "troubled teenager" struggling to "fit in and be accepted by his peers."[13] Their statements are similar to the examples of "lay testimony" the Supreme Court provided in O'Dell for the purpose of "evaluating whether youth diminished a defendant's culpability." See, 183 Wn.2d at 697-98.

As the State points out, Light-Roth did not request an exceptional sentence downward on the basis of his youthfulness. But, as discussed above, Light-Roth could not have successfully argued that his youthfulness entitled him to an exceptionally lenient sentence until O'Dell. Therefore, Light-Roth has shown that, had O'Dell been decided before he was sentenced, he could have argued that his youthfulness justified an exceptional sentence below the standard range. We

---

[11] Light-Roth, 2007 WL 2234613 at *4.
[12] PRP App. C at 1.
[13] PRP App. C at 3.

conclude that the denial of an opportunity to seek an exceptional sentence is sufficient to make O'Dell material to Light-Roth's sentence.

Accordingly, we conclude that Light-Roth's petition is based solely on the ground that there has been a significant, material change in the law that applies retroactively. Thus, the petition falls into the exception for the one-year time bar and is timely.

### Barred as Successive

The State argues that, in addition to being untimely, this court may not address the merits of Light-Roth's petition because it is successive. But the State appears to concede that, if O'Dell announced a significant change in the law, that change would amount to good cause to excuse Light-Roth's otherwise successive petition.

"If a person has previously filed a petition for personal restraint, the court of appeals will not consider the petition unless the person certifies that he or she has not filed a previous petition on similar grounds, and shows good cause why the petitioner did not raise the new grounds in the previous petition." RCW 10.73.140. "A significant intervening change in the law resulting from a court decision satisfies the good cause requirement." In re Pers. Restraint of Flippo, 191 Wn. App. 405, 409, 362 P.3d 1011 (2015), aff'd, 187 Wn.2d 106, 385 P.3d 128 (2016); see also State v. Brown, 154 Wn.2d 787, 794, 117 P.3d 336 (2005).

This is Light-Roth's second personal restraint petition. Thus, we should not consider it unless Light-Roth can show good cause. But, as discussed, O'Dell announced a significant and material change in the law. Therefore, Light-Roth has

15

shown good cause, and, his petition is not barred as successive.

Because we conclude that Light-Roth's petition is timely and not successive, we reach the merits of the petition.

## Miscarriage of Justice

In its response, the State appears to concede that, if the petition is timely, Light-Roth is entitled to a resentencing hearing. The State asserts, "It is important to note, that under Light-Roth's reasoning, every offender of an arguably youthful age who was previously sentenced would now be entitled to a new sentencing proceeding."[14] We treat this argument as a concession that Light-Roth is entitled to relief if we reach the merits of his petition.

"When nonconstitutional grounds are asserted for relief from personal restraint, the petitioner must establish that he is unlawfully restrained, and that the unlawful restraint is due to a fundamental defect that inherently results in a miscarriage of justice." Rowland, 149 Wn. App. at 507.

Light-Roth's claimed defect is that he was precluded from arguing to the trial court that his youth was a mitigating factor that it could consider. In O'Dell, the court concluded that failing to consider youth was a failure to exercise discretion, which was "itself an abuse of discretion subject to reversal." 183 Wn.2d at 697. The court relied on State v. Grayson, in which the court held that a court abused its discretion by failing to consider a defendant's request for a drug offender sentencing alternative. O'Dell, 183 Wn.2d at 697 (citing Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005)). In both cases, the court remanded for a

---

[14] Resp. to PRP at 9.

new sentencing hearing.[15] O'Dell, 183 Wn.2d at 697; Grayson, 154 Wn.2d at 342-43. Thus, the trial court's failure to consider Light-Roth's youth as a mitigating factor is reversible error.

This court has previously suggested that a sentencing error may be harmless in a personal restraint petition context. In Rowland, this court addressed the merits of a petition after concluding that it fell under the exception to the one-year time bar. 149 Wn. App. at 507. The trial court had improperly calculated the petitioner's offender score before imposing an exceptional sentence. Rowland, 149 Wn. App. at 508. The court held that, under those circumstances, "remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." Rowland, 149 Wn. App. at 508. But the State has made no argument that any error in this case was harmless.

We grant Light-Roth's petition and remand for resentencing.

_Trickey, A.CJ_

WE CONCUR:

_Appelwick, J._          _Cox, J._

---

[15] Light-Roth's situation is also distinguishable because, in each case, the party had sought the relief the trial court failed to consider granting. Here, neither party appears to suggest that Grayson or O'Dell hold that, going forward, a court must consider an exceptional sentence below the standard range for young adult defendants, regardless of whether the defendant requests one.

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 AUG 14 AM 10: