FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 DEC -3 AM 9: 23

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 77047-1-I |
| GAIL BRASHEAR, | DIVISION ONE |
| Petitioner. | PUBLISHED OPINION |
| | FILED: December 3, 2018 |

APPELWICK, C.J. — Brashear was convicted of first degree murder, first degree assault, and first degree burglary. At the time of her crimes, she was 15 years old. She was sentenced to 614 months (51.2 years) of confinement. After serving 20 years of confinement, she petitioned the ISRB for early release pursuant to RCW 9.94A.730, a 2014 statute governing review of juvenile sentences. Following a hearing on the matter, the ISRB found that she was not releasable. We reverse and remand.

## FACTS

On May 11, 1996, 15 year old Gail Brashear stopped an adult male in his pickup truck and asked him for a ride. She then got into his passenger seat and shot him twice. Her two male companions then joined her and attempted to move the victim out of the truck. Noticing that the three of them appeared to be having trouble with the truck, two people stopped to offer help. Brashear and her companions asked them where the nearest hospital was. After they left, Brashear fatally stabbed the victim in the neck several times.

Brashear pleaded guilty to first degree murder, first degree assault, and first degree burglary, with a special finding for use of a deadly weapon on all counts. On May 7, 1997, she was sentenced to a total of 614 months.

In the 20 years between Brashear's sentencing and petition for release, the United States Supreme Court has held that a mandatory life sentence without parole for those under the age of 18 at the time of their crime violates the Eighth Amendment. Miller v. Alabama, 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). In response to that decision, the Washington legislature, in 2014, enacted RCW 9.94A.730 as a statutory "Miller fix." State v. Scott, 196 Wn. App. 961, 966-67, 385 P.3d 783 (2016), aff'd, 190 Wn.2d 586, 416 P.3d 1182 (2018). Under the statute, a person convicted of one or more crimes committed prior to turning 18 may petition the Indeterminate Sentence Review Board (ISRB) for early release after serving 20 years of confinement.[1] RCW 9.94A.730(1). Within 180 days of receiving a petition, the Department of Corrections (DOC) must conduct an examination of the petitioner, "including a prediction of the probability that the person will engage in future criminal behavior if released on conditions to be set by the board." RCW 9.94A.730(3).

The statute directs the ISRB as follows in making its release determination:

> The board shall order the person released under such affirmative and other conditions as the board determines appropriate, unless the board determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the person will commit

---

[1] The statute does not apply if a person received a sentence for aggravated first degree murder under RCW 10.95.030 or a sex offense under RCW 9.94A.507. RCW 9.94A.730(1).

> new criminal law violations if released. The board shall give public safety considerations the highest priority when making all discretionary decisions regarding the ability for release and conditions of release.[2]

Id. (emphasis added). The statute also states that the ISRB "shall provide opportunities for victims and survivors of victims of any crimes for which the offender has been convicted to present statements as set forth in RCW 7.69.032." RCW 9.94A.730(4).

On April 12, 2017, the ISRB held a hearing regarding Brashear's petition for release pursuant to RCW 9.94A.730. At the hearing, both Brashear and DOC Classification Counselor (CC) Jessica Poston testified.[3] In addition to this testimony, the ISRB considered the following:

> [I]nformation provided by the sentencing court/prosecutor; the most recent DOC facility plan; information regarding institutional behavior and programming; any letters of support and/or concerns sent to the Board; the Pre-Sentence Investigation report; and the Psychological Evaluation dated September 21,2016 [sic] by Deborah Wentworth, Ph.D.

---

[2] This statute differs from parolability decisions under RCW 9.95.100. RCW 9.94A.730(3) directs the ISRB to order a person released unless it determines by a preponderance of the evidence that, despite conditions, the person is more likely than not to reoffend. In contrast, when the ISRB makes a parolability decision under RCW 9.95.100, "[t]he board cannot grant parole until it determines the inmate has been rehabilitated and is a fit subject for release." In re Pers. Restrain of Lain, 179 Wn.2d 1, 11, 315 P.3d 455 (2013). "An offender is not entitled to parole" under RCW 9.95.100. Id. at 12. "The decision of whether to parole a prisoner 'may be made for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate.'" In re Pers. Restraint of Dyer, 157 Wn.2d 358, 363, 139 P.3d 320 (2006) (Dyer I) (alterations in original) (internal quotation marks omitted) (quoting Meachum v. Fano, 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 45 (1976)). Thus, whereas parole is not presumptive under RCW 9.95.100, early release is presumptive under RCW 9.94A.730(3) unless the ISRB determines that the petitioner is more likely than not to reoffend.

[3] This testimony is not in the record before us. In describing the testimony, we cite to the ISRB's summary of the testimony in its decision and reasons.

3

CC Poston stated that Brashear has been a model inmate since making a turnaround in 2008, when she had her last serious infraction. Before making that turnaround, she stated that Brashear's infractions were so significant that she was sent to a program in another state better equipped to handle her "extreme acting out."

Brashear provided the ISRB with a "disclosure of her index offense" and context for what was happening in her life at the time of her offenses. She described having a "shift in her thinking" in 2008, and stated that since that time she has taken advantage of programming opportunities. The ISRB noted that Brashear "became quite emotional at times and did appear to be remorseful for her actions." It also noted that Brashear appeared to have "somewhat limited insight into her thinking or emotions at the time of the murder and other violent assault beyond the connection to her codefendant."

In its reasoning, the ISRB first discussed the psychological evaluation Dr. Wentworth conducted for the DOC. The ISRB acknowledged Brashear's description of her offense to Dr. Wentworth, the mental health therapy Brashear has received, and Dr. Wentworth's evaluation of Brashear's stability and risk to reoffend. Dr. Wentworth stated that Brashear "openly and transparently describe[d] the instant offense with no distortions or denials about her role in killing the victim." She further stated that Brashear has previously benefitted from mental health treatment "to address her history of others abusing her and her criminogenic behaviors and thoughts," and that she "has been stable and not required mental

4

health treatment since September 2013." Dr. Wentworth concluded that "[o]verall, the results of this evaluation suggest that Ms. Brashear is at a low risk to reoffend."[4] She found that Brashear would benefit from continued therapy "for stress and anger issues, especially concerning those that may stem from possible reintegration into the community."

The ISRB next stated that since her behavior escalated in 2007 and 2008,[5] Brashear "appears to have made a complete shift in her behavior and subsequent programming." It found that she acknowledges her role in her crimes and has participated in programs to assist her in understanding her behavior. It continued,

> However, Ms. Brashear has committed horrible crimes that have left lasting impacts to many of the survivors of her victims. The Board believes it is also important to note that Ms. Brashear has served a relatively small portion of what the minimum sentence is on all counts as well as the SRA [(Sentencing Reform Act of 1981, ch. 9.94A RCW)] minimum/maximum. Additionally, the Board has received a strong recommendation from the Snohomish [County] Prosecutor that requests the Board to not release Ms. Brashear.

Snohomish County Prosecutor Mark Roe stated in his letter that "[t]he 20 years [Brashear] has served is simply nowhere near adequate punishment" for the crime she committed.

The ISRB denied Brashear's petition for release. It acknowledged Brashear's "good work" since 2008, stating that it would like to see her "continue

---

[4] Dr. Wentworth further concluded that records documenting improved functioning and maturation over time, combined with results from the structured assessment of protective factors, suggest that, for Brashear, "the risk level could be viewed as more in the 'very low' range."

[5] The ISRB noted that between 1997 and 2008, Brashear's infraction history consisted of 97 serious infractions. Brashear has received six general infractions since that time, the last of which she received in 2014.

to demonstrate that her past behaviors are truly in her past" and continue to participate in programming "that will prepare her for a future step down to lower levels of custody and eventually release to the community."

Brashear filed this personal restraint petition (PRP), alleging that the ISRB abused its discretion when it denied her parole.

## DISCUSSION

### I. Early Release Under RCW 9.94A.730

Brashear argues that the ISRB abused its discretion by citing a reason other than recidivism as the only support for its denial of her release. She asks this court to reverse the ISRB's decision and remand with instructions to the ISRB ordering her to be paroled.

To succeed on a PRP challenge of an ISRB decision, a petitioner must show that she is under unlawful restraint. RAP 16.4; In re Pers. Restraint of Dyer, 164 Wn.2d 274, 285, 189 P.3d 759 (2008) (Dyer II). Brashear argues that the ISRB's abuse of discretion results in an unlawful restraint.

A petitioner bears the burden to prove the ISRB abused its discretion. Id. at 286. "The ISRB abuses its discretion when it fails to follow its own procedural rules for parolability hearings or acts without consideration of and in disregard of the facts." In re Pers. Restraint of Dyer, 157 Wn.2d 358, 363, 139 P.3d 320 (2006) (Dyer I). Disregarding the evidence and supporting its decision with speculation and conjecture also constitutes an abuse of discretion. Id. at 369. This court "must

find the ISRB acted willfully and unreasonably to support a determination that the parolability decision is arbitrary and capricious." Dyer II, 164 Wn.2d at 286.

RCW 9.94A.730(1) permits a person convicted of a crime as a juvenile to petition the ISRB for early release after serving at least 20 years of confinement. Early release under conditions the ISRB determines appropriate is presumptive, unless the ISRB determines by a preponderance of the evidence that, "despite such conditions, it is more likely than not that the person will commit new criminal law violations if released." RCW 9.94A.730(3). The statute directs the ISRB to "give public safety considerations the highest priority when making all discretionary decisions regarding the ability for release and conditions of release." Id.

Brashear argues that the ISRB's failure to address her risk level in light of possible parole conditions illuminates the fact that she "was denied parole for non-statutory reasons." She relies on Dyer I and states that this case is a "near carbon copy" of that decision.

In Dyer I, the State Supreme Court held that the ISRB abused its discretion when it gave "no indication that the evidence in [Dyer's] file supported its decision or that the evidence was used to refute any new evidence presented at the hearing." 157 Wn.2d at 365. The ISRB had considered Dyer for parole under RCW 9.95.100 and concluded that he was not parolable. Id. at 360, 362. Despite a psychological evaluation indicating he was at a low risk to reoffend, the ISRB rejected the value of the evaluation because of its concern that Dyer had learned how to take psychological tests. Id. at 367. The court found that other than

conjecture, nothing in the record supported the conclusion that Dyer had learned how to manipulate tests. Id. Next, the court found that despite the ISRB's statutory mandate to consider whether Dyer demonstrated his rehabilitation was complete, the ISRB dismissed evidence of Dyer's rehabilitation "based on the facts of his underlying crimes." Id. at 368. Specifically, the ISRB disregarded the fact that Dyer had participated in offender change programming and assumed his good behavior in prison was motivated by manipulation. Id. The court found that this conclusion was also unsupported by the record. Id.

Here, the ISRB did not explicitly reject the psychological evaluation conducted by Dr. Wentworth. It acknowledged Dr. Wentworth's finding that Brashear is at a low risk to reoffend. It also acknowledged that Brashear appeared to struggle during her first 10 to 11 years in prison, but then made "a complete shift in her behavior." But, the ISRB did not rely on any direct evidence of Brashear's likelihood to reoffend. It did not cite evidence refuting Dr. Wentworth's finding that Brashear is at a low risk to reoffend or its own acknowledgment that Brashear made a complete shift in her behavior. Instead, it cited Brashear's role in the crimes she committed, the lasting impacts those crimes had on others, the "relatively small portion" of the minimum sentence she has served on each count, and Prosecutor Roe's letter opposing her release. The ISRB also failed to discuss any conditions associated with her release and why, despite appropriate conditions, she would be likely to reoffend.

8

Early release under RCW 9.94A.730(3) is presumptive unless the ISRB determines that, despite conditions, it is more likely than not that a person will reoffend. The ISRB stated that during her testimony, Brashear appeared to have "somewhat limited insight into her thinking or emotions at the time of the murder." But, Brashear's testimony before the ISRB is not in the record before us. It later stated that she "acknowledges her role in her crimes." And, Dr. Wentworth observed that Brashear "openly and transparently describe[d] the instant offense with no distortions or denials about her role in killing the victim." The ISRB also recognized Brashear's "complete shift" in behavior after struggling her first 10 to 11 years in prison. It made note of CC Poston's testimony that Brashear has been a "model inmate" since 2008. This dramatic shift in behavior is probative of change and is particularly relevant to the purpose of the statute, consideration of whether a juvenile offender has changed.

Rather than focusing on the statutory presumption of release, her awareness of her crimes, her changed behavior, her assessed low risk to reoffend, and appropriate release conditions, the ISRB relied on Brashear's underlying crimes, the impact of those crimes, and the small portion of her sentence served in denying her petition. These are not factors that guide the ISRB's decision under RCW 9.94A.730(3).

RCW 9.94A.730(4) provides victims and survivors of victims the opportunity to present statements to the ISRB. These statements shall be made in accordance with RCW 7.69.032. RCW 9.94A.730(4). Under RCW 7.69.032, it is the

legislature's intent "to ensure that victims, survivors of victims, and witnesses of crimes are afforded the opportunity to make a statement that will be considered prior to the granting of postsentence release from confinement." But, the impact on victims and survivors of victims was a consideration at the time of sentencing in setting the length of sentence. See RCW 9.94A.500(1). The inclusion of the opportunity for such statements here is for a different purpose, and its availability does not change the statutory standard to be applied by the ISRB. The ISRB must order a person released unless it finds that, despite conditions, he or she is more likely than not to reoffend. RCW 9.94A.730(3). Therefore, the statements received pursuant to RCW 9.94A.730(4) are properly considered as to only what community release conditions are appropriate or whether the offender is likely to reoffend. The ISRB did not consider any conditions in reaching its decision. The letters opposing Brashear's release are not probative of her likelihood to reoffend.

RCW 9.94A.730 applies only where the crimes of the juvenile were very serious and resulted in very long sentences. Of course Brashear's crimes were heinous. But, Brashear's crime was not one of a limited number of crimes for which the legislature declared that no presumption of release is available. RCW 9.94A.730(1). The statute expressly contemplates that the offender will not serve more than 20 years of their sentence unless they are likely to reoffend. RCW 9.94A.730(3). The ISRB's reliance on Brashear's underlying crimes, their impact, and the portion of her sentence served conflicts with its statutory mandate to consider whether she is more likely than not to reoffend.

Brashear's behavioral turn around compared to her first 10 to 11 years in prison is probative of the maturation of a juvenile offender that the statute intended to identify, not probative that Brashear is likely to reoffend. The other direct evidence in the record that assesses Brashear's likelihood to reoffend is Dr. Wentworth's psychological evaluation. It suggests her likelihood to reoffend is low or very low. The ISRB abused its discretion by denying Brashear's release and not determining appropriate release conditions.

II.   Remedy

At oral argument, the State argued that if this court finds that the ISRB abused its discretion, the appropriate remedy is to remand the case back to the ISRB for it to consider what this court felt it ignored. Relying on In re Personal Restraint of Whitesel, 111 Wn.2d 621, 763 P.2d 199 (1988), it argued that it is not the role of this court to substitute its discretion for that of the ISRB.

In Whitesel, the State Supreme Court reiterated that "the courts are not a super Indeterminate Sentencing Review Board and will not interfere with a Board determination in this area unless the Board is first shown to have abused its discretion in setting a prisoner's discretionary minimum term." Id. at 628. We see no reason that a different standard should apply to evaluation of the ISRB in the context of juveniles petitioning under RCW 9.94A.730. But, here, the ISRB was not exercising its very broad discretion in setting a prisoner's minimum term. An abuse of discretion in that context will usually require remand for another opportunity to exercise that discretion. In the context of an early release

11

determination pursuant to RCW 9.94A.730, where the record does not establish a likelihood to reoffend, the statute requires a release on appropriate conditions, not a second bite at the apple. RCW 9.94A.730(3).

We reverse and remand to the ISRB to order Brashear released and to determine appropriate release conditions.

Appelwick, C.J.

WE CONCUR:

Chun, J.

Schindler, J.