

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAY 1 0 2018

*Fairhurst, CJ.*
CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on 5-10-18

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 94020-7 |
| Respondent, | ) | |
| v. | ) | En Banc |
| JAI'MAR ELI SCOTT, | ) | |
| Petitioner. | ) | Filed ___ **MAY 1 0 2018** ___ |

MADSEN, J.—This case addresses the adequacy of the parole remedy available under RCW 9.94A.730, the *Miller*[1] "fix" statute. Consistent with the Supreme Court's decision in *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), we hold that RCW 9.94A.730's parole provision is an adequate remedy for a *Miller* violation, rendering unnecessary the resentencing of a defendant who long ago received a de facto life sentence as a juvenile.

---

[1] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

FACTS

Jai'Mar Scott was convicted by a jury in 1990 of first degree premeditated murder for killing his neighbor, a 78-year-old-woman who suffered from Alzheimer's disease. *See State v. Scott*, 72 Wn. App. 207, 210, 866 P.2d 1258 (1993), *aff'd sub nom. State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995). Scott was 17 years old when he committed the murder. The juvenile court declined jurisdiction, and Scott was tried, convicted, and sentenced as an adult.

At sentencing, the parties agreed that the standard range was 240 to 320 months, with 240 months being the mandatory minimum sentence that could be imposed. The State requested an exceptional sentence above the standard range. The defense requested the low end of the standard range. The trial court sentenced Scott to an exceptional sentence of 900 months based on four independent findings: (1) that Scott's conduct constituted deliberate cruelty, (2) that his conduct was an abuse of trust, (3) that the crime involved multiple injuries, and (4) that the victim was particularly vulnerable.

On direct appeal, the Court of Appeals held that the 900-month sentence imposed was not clearly excessive because the "aggravating factors are both numerous and individually and collectively egregious." *Id.* at 222. The Court of Appeals also rejected Scott's assertion that his exceptional sentence was improper in light of his youth at the time of the crime. This court affirmed in *Ritchie*, 126 Wn.2d at 399, which held that the sentencing court had properly relied on "four horrid aggravating factors" in imposing the 900-month sentence.

As Scott served his sentence, the law of juvenile sentencing changed dramatically, and in 2012 the Supreme Court decided *Miller*, 567 U.S. at 465, which held that a sentence imposed on a juvenile of mandatory life without parole violates the prohibition on cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Following *Miller*, this court, in *State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015), held that a trial court must be allowed to consider youth as a mitigating factor when imposing a sentence on a person who was barely 18 years old at the time of his crime. Two months later, Division One held, in *State v. Ronquillo*, 190 Wn. App. 765, 774-77, 361 P.3d 779 (2015), that *Miller* applied to juveniles receiving aggregate sentences that resulted in the equivalent of life without parole, that is, de facto life sentences.[2]

In May 2016, Scott filed a motion for relief from judgment requesting a new sentencing hearing. The State asked the superior court to transfer the untimely motion to the Court of Appeals for consideration as a personal restraint petition (PRP) pursuant to CrR 7.8. The court denied the State's motion and granted Scott's motion for relief from judgment. The State appealed.

The Court of Appeals reversed the trial court's grant of a new sentencing hearing, finding, "The constitutional violation identified in the *Miller* line of cases is the failure to allow a juvenile offender the opportunity for release when his or her crime was the result

---

[2] This court recently also held that *Miller* applies to juvenile homicide offenders facing de facto life-without-parole sentences in *State v. Ramos*, 187 Wn.2d 420, 436, 387 P.3d 650, *cert. denied*, 138 S. Ct. 467 (2017).

of youthful traits." *State v. Scott*, 196 Wn. App. 961, 971, 385 P.3d 783 (2016). The

Court of Appeals concluded, "In *Montgomery*, the Supreme Court expressly approved of

statutes that provide the opportunity for parole as remedies for a *Miller* violation." *Id.*

The Court of Appeals concluded that due to the enactment of "Washington's *Miller* fix

statute," RCW 9.94A.730,[3] "Scott is no longer serving a sentence that is the equivalent of

life without parole. As such, *Miller* is not a significant change in law that is material to

his sentence." *Id.* at 972. Scott sought review, which this court granted. *State v. Scott*,

188 Wn.2d 1001, 393 P.3d 362 (2017).

## ANALYSIS

### Standard of Review

Constitutional interpretation is a question of law reviewed de novo. *State v.*

*MacDonald*, 183 Wn.2d 1, 8, 346 P.3d 748 (2015). Questions of statutory interpretation

are also reviewed de novo. *State v. Bunker*, 169 Wn.2d 571, 577, 238 P.3d 487 (2010).

A collateral attack on a sentence generally must be brought within one year after

the judgment and sentence become final. RCW 10.73.090(1), (2). A collateral attack[4]

---

[3] In 2014, the legislature enacted "'*Miller* fix'" statutes "with the intention of bringing Washington's sentencing framework into conformity with *Miller*." *Ronquillo*, 190 Wn. App. at 777-78 (citing RCW 9.94A.730; LAWS OF 2014, ch. 130 (effective June 1, 2014)). RCW 9.94A.730, in relevant part, provides that a juvenile offender may petition the Department of Corrections Indeterminate Sentencing Review Board (ISRB) for early release after serving no less than 20 years of total confinement. RCW 9.94A.730(1). An offender may not petition for early release if he has been convicted of a crime committed after his 18th birthday or has committed a disqualifying infraction in the previous 12 months. *Id.* Such qualifying petitioner is presumptively eligible for early release. RCW 9.94A.730(3). A person denied release by the ISRB may repetition five years after the date of denial or at an earlier date as may be set by the ISRB. RCW 9.94A.730(6).
[4] An untimely motion for relief from judgment filed in the trial court "shall" be transferred to the Court of Appeals for consideration as a PRP. CrR 7.8(c)(2).

filed more than one year after the underlying judgment will not be considered time barred by RCW 10.73.090 when it is based on a retroactively applicable "significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered." RCW 10.73.100(6). Here, there is no dispute that *Miller* constituted a retroactively applicable, significant change in the law. *See Scott*, 196 Wn. App. at 965. Nevertheless, the Court of Appeals held that RCW 10.73.100(6) did not apply because *Miller* was not "material" to Scott's unconstitutional sentence and thus, Scott's motion for resentencing was time barred. *Id*. at 972.

This court has previously explained:

> While litigants have a duty to raise *available* arguments in a timely fashion and may later be procedurally penalized for failing to do so, . . . they should not be faulted for having omitted arguments that were essentially *unavailable* at the time, as occurred here. We hold that where an intervening opinion has effectively overturned a prior appellate decision that was originally determinative of a material issue, the intervening opinion constitutes a "significant change in the law" for purposes of exemption from procedural bars.

*In re Pers. Restraint of Greening*, 141 Wn.2d 687, 697, 9 P.3d 206 (2000) (footnote omitted). Further, in *In re Personal Restraint of Thomas*, 180 Wn.2d 951, 953, 330 P.3d 158 (2014), we dismissed a PRP as mixed, but acknowledged, "We recognize that Thomas's claim premised on *Miller* may not be time barred; if we agreed with Thomas that the rule in *Miller* applies retroactively, then that claim satisfies the exception to the one-year time bar in RCW 10.73.100(6) and we could reach its merits."

The Supreme Court has recently declared in *Montgomery* that *Miller* applies retroactively. Nevertheless, as discussed *infra*, *Montgomery* also identifies an adequate

remedy for a *Miller* violation in the form of providing a parole opportunity for juvenile defendants. 136 S. Ct. at 736. Consequently, because an *adequate remedy* is available to Scott, this court cannot grant him the collateral relief (via a PRP) that he seeks. *See* RAP 16.4(d) ("The appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances."). Accordingly, we hold that the collateral relief Scott seeks (i.e., resentencing) is unavailable because he has an adequate remedy, which is to seek parole under RCW 9.94A.730.

Scott and amici[5] contend that in light of the *Miller* violation here, the appropriate remedy is to remand for resentencing and an individualized consideration of youth. We reject the contentions that resentencing is warranted.

In *Miller*, the Supreme Court observed, "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" 567 U.S. at 469 (quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)). Accordingly, justice requires that "'punishment for crime should be [appropriately] graduated and proportioned' to both the offender and the offense." *Id.* (internal quotation marks omitted) (quoting *Roper*, 543 U.S. at 560). In other words, "'[t]he concept of proportionality is central to the Eighth Amendment.'" *Id.* (alteration in original) (quoting *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176

---

[5] One amicus brief was submitted on behalf of the following: The American Civil Liberties Union of Washington, Columbia Legal Services, Juvenile Law Center, National Juvenile Defender Center, TeamChild, Washington Association of Criminal Defense Lawyers, and Washington Defender Association.

L. Ed. 2d 825 (2010). And that concept is viewed "less through a historical prism than according to 'the evolving standards of decency that mark the progress of a maturing society.'" *Id.* at 469-70 (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The Court in *Miller* built on its prior decisions in *Roper* and *Graham*[6] in concluding that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Id.* at 470.

In *Miller*, the Court was considering "the constitutionality of mandatory sentencing schemes—which by definition remove a [sentencing] judge's . . . discretion." *Id.* at 483 n.10. The Court explained, "Our decision does not categorically bar a penalty for a class of offenders or type of crime . . . . Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—*before* imposing a particular penalty." *Id.* at 483 (emphasis added).

While *Miller* held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," the Court reiterated that "'[a] State is not required to guarantee eventual freedom,' but must provide '*some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.*'" *Id.* at 479 (emphasis added) (quoting *Graham*, 560 U.S. at 75).

---

[6] The Court explained that *Roper* held that "the Eighth Amendment bars capital punishment for children," and *Graham* held that the Eighth Amendment also "prohibits a sentence of life without the possibility of parole for a child who committed a nonhomicide offense." *Miller*, 567 U.S. at 470.

The Court's discussion in *Miller*, which rejected the State's argument that sufficient discretion is exercised in the course of the juvenile transfer decision, is instructive here. The Court explained as follows:

> [T]he question at transfer hearings may differ dramatically from the issue at a post-trial sentencing. Because many juvenile systems require that the offender be released at a particular age or after a certain number of years, transfer decisions often present a choice between extremes: light punishment as a child or standard sentencing as an adult (here, life without parole). In many States, for example, a child convicted in juvenile court must be released from custody by the age of 21. Discretionary sentencing in adult court would provide different options: *There, a judge* or jury *could choose*, rather than a life-without-parole sentence, *a lifetime prison term with the possibility of parole* or a lengthy term of years. It is easy to imagine a judge deciding that a minor deserves a (much) harsher sentence than he would receive in juvenile court, while still not thinking life-without-parole appropriate. For that reason, the discretion available to a judge at the transfer stage cannot substitute for discretion at post-trial sentencing in adult court—and so cannot satisfy the Eighth Amendment.

*Id.* at 488-89 (emphasis added) (citations omitted). Notably, the circumstance that the *Miller* court cites with approval in the above passage is precisely the circumstance Scott finds himself in by operation of the *Miller* fix statute in this case—he has a de facto lifetime prison term *with the possibility of parole*. This meets *Miller*'s requirement that the State provide "'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" *Id.* at 479 (quoting *Graham*, 560 U.S. at 75).

Scott argues that this court's recent decision in *State v. Houston-Sconiers*, 188 Wn.2d 1, 20, 391 P.3d 409 (2017), supports resentencing in his case. We disagree. Applying *Miller*, this court held that "[t]rial courts must consider mitigating qualities of youth *at sentencing* and must have discretion to impose any sentence below the otherwise

applicable SRA [(Sentencing Reform Act of 1981, ch. 9.94A RCW)] range and/or

sentence enhancements." *Id.* at 21 (emphasis added). This court explained in *Houston-*

*Sconiers*, "Critically, the Eighth Amendment requires trial courts to exercise this

discretion *at the time of sentencing itself*, regardless of what opportunities for

discretionary release may occur down the line." *Id.* at 20 (emphasis added). In *Houston-*

*Sconiers*, this court was addressing the appeal of a juvenile offender's sentence that was

not yet final. The *Houston-Sconiers* court acknowledged that the Supreme Court had

approved a postsentencing *Miller* fix of *extending parole eligibility* to juveniles as a

remedy where an offending juvenile conviction and sentence are "long final."[7] *Id.* at 20

(citing *Montgomery*, 136 S. Ct. at 736).

Further, as noted, *Montgomery* held that *Miller* announced a new substantive rule

of constitutional law that is "retroactive in cases on collateral review." 136 S. Ct. at 732.

The *Montgomery* Court acknowledged that "*Miller* held that mandatory life without

parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on

'cruel and unusual punishments.'" *Id.* at 726 (internal quotation marks omitted) (quoting

*Miller*, 567 U.S. at 465). The *Montgomery* Court stated:

> *Miller* required that sentencing courts consider a child's "diminished
> culpability and heightened capacity for change" *before* condemning him or
> her to die in prison. Although Miller did not foreclose a sentencer's ability
> to impose life without parole on a juvenile, the Court explained that a

---

[7] Similarly, in *Ramos*, 187 Wn.2d at 436, this court stated:
> We acknowledge that the Supreme Court has held that for cases on
> collateral review, life-without-parole sentences previously imposed without
> proper *Miller* hearings may be remedied "by permitting juvenile homicide
> offenders to be considered for parole, rather than by resentencing them."
> *Montgomery*, 136 S. Ct. at 736. However, this case is before us on direct appeal.

9

lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect " 'irreparable corruption.' "

*Id.* at 726 (emphasis added) (citation omitted) (quoting *Miller*, 567 U.S. at 479-80

(quoting *Roper*, 543 U.S. at 573)). The *Montgomery* Court explained

> *Miller*, it is true, did not bar a punishment for all juvenile offenders, . . . *Miller* did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility. . . . Before *Miller*, every juvenile convicted of a homicide offense could be sentenced to life without parole. After *Miller*, it will be the rare juvenile offender who can receive that same sentence. . . . Miller drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption.

*Id.* at 734. The *Montgomery* Court explained that procedurally, "*Miller* requires *a sentencer* to consider a juvenile offender's youth and attendant characteristics *before* determining that life without parole is a proportionate sentence." *Id.* (emphasis added). Such a hearing "where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." *Id.* at 735 (quoting *Miller*, 567 U.S. at 465).

The *Montgomery* Court observed, "*Miller*'s conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution." *Id.* at 736. While acknowledging the potential scope of the Court's retroactive application of *Miller*, the *Montgomery* Court proceeded to explain the appropriate remedy, stating:

> Giving *Miller* retroactive effect . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. *A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered*

10

*for parole, rather than by resentencing them.* See, *e.g.,* Wyo. Stat. Ann. § 6-10-301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. *Those prisoners who have shown an inability to reform will continue to serve life sentences.* The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition— that children who commit even heinous crimes are capable of change.

*Id.* at 736 (emphasis added). Thus, *Montgomery* provides that the Washington *Miller* fix statute's parole provision cures the *Miller* violation in Scott's case. Accordingly, as discussed above, under *Miller, Montgomery, Houston-Sconiers,* and *State v. Ramos,* 187 Wn.2d 420, 387 P.3d 650, *cert. denied,* 138 S. Ct. 467 (2017), remand for resentencing is not required by the Eighth Amendment in this case.

Nevertheless, Scott argues that the Wyoming statute approved in *Montgomery* is distinguishable. But while the Wyoming and Washington *Miller* fix statutes are not identical, they do not differ in any substantive way relevant to the present inquiry. Both provide a parole avenue to juvenile offender inmates after a set period of time. Notably, the Washington statute, RCW 9.94A.730, provides more advantages to the inmate by providing a right to petition for early release after serving 20 years (5 years earlier than under the Wyoming statue) and provides the petitioner with a presumption of early release (Wyoming's *Miller* fix statute has no such presumption). *See* RCW 9.94A.730(1), (3); WYO. STAT. ANN. § 6-10-301.

Scott and amicus also complain that while RCW 9.94A.730 provides for parole eligibility, it does not provide for consideration of a defendant's diminished capacity due to attributes of youth. First, the Wyoming statute that *Montgomery* expressly approved also lacks the considerations that Scott complains are missing. *See* WYO. STAT. ANN. § 6-10-301. Second, *Montgomery* expressly approved the extension of "parole eligibility" to juvenile offenders as sufficient to address a *Miller* violation on collateral review, precisely as RCW 9.94A.730 provides. 136 S. Ct. at 736. Third, while *Miller* requires that at the sentencing of a juvenile, the court must consider the juvenile's youth *before* imposing a sentence, *Miller* also acknowledged that the State "must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" 567 U.S. at 479 (quoting *Graham*, 560 U.S. at 75). Here, RCW 9.94A.730 does so.

We note that contemporaneously with Scott's present collateral attack he petitioned the Department of Corrections Indeterminate Sentencing Review Board (ISRB) for early release under RCW 9.94A.730.[8] Although the ISRB decision does not expressly focus on Scott's diminished culpability based on his juvenile status at the time of the crime, the transcript of the ISRB hearing establishes that the ISRB specifically

---

[8] We grant the State's motion to supplement the record to include the transcript and ISRB decision for Scott's parole hearing under RAP 9.10, which provides, in part:

> If the record is not sufficiently complete to permit a decision on the merits of the issues presented for review, the appellate court may, on its own initiative or on the motion of a party (1) direct the transmittal of additional clerk's papers and exhibits or administrative records and exhibits certified by the administrative agency, or (2) correct, or direct the supplementation or correction of, the report of proceedings.

inquired of Scott about his circumstances, environment, and mind set at the time of the crime, and how and to what extent he had matured into a different person by the time of the parole hearing.[9] Taken together, the ISRB transcript and decision[10] show that the ISRB *did* consider Scott's youth at the time of the crime and how he purportedly has changed since that time, but the ISRB was persuaded by other evidence (i.e., the psychologist's evaluation) that Scott should not yet be released.

Scott and amicus next contend that the passage in *Montgomery* approving parole eligibility as a *Miller* violation fix is merely dicta and not precedential. In *State v. Williams-Bey*, a Connecticut appellate court addressed and persuasively rejected the same argument as follows:

> We first address the defendant's claim that the United States Supreme Court's statement that parole eligibility will remedy a *Miller* violation is dicta . . . . We are not persuaded.
> Black's Law Dictionary (9th Ed. 2009) defines "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential . . . ." Dicta of the United States Supreme Court, however, is persuasive

---

[9] In the course of the hearing, Scott's youth at the time of the crime was discussed, including his lack of appropriate role model at home. Scott described his father as mostly absent and a "thug" who introduced Scott to drugs. ISRB Verbatim Report of Proceedings (Mar. 15, 2016) at 24-25. Scott stated that his extended family blames his mom because she could have raised Scott better. *Id.* at 26-27. Scott said at age 17, he had no maturity and "didn't know what [he] was doing." *Id.* at 27, 50. He knew only of gang and street mentality as a youth, and that slapping women and other assaults were "normal," but Scott told the ISRB that now he is someone who takes responsibility. *Id.* at 24, 51.

[10] The ISRB decision ultimately turned on the evaluation and recommendation of a psychologist that Scott needed sex offender treatment "before any reduction on custody is considered." ISRB Decision & Reasons, No. 970703 (Apr. 26, 2016) at 6. The psychologist recommended that Scott complete sex offender treatment and participate in a cognitive-behaviorally based offender change program. *Id.* The ISRB determined that Scott was "not releasable," finding that he was more likely than not to commit a new crime if released on conditions. *Id.* at 1. The ISRB determined that Scott could repetition for release in 2019 "or upon successful completion of" a specified sex offender treatment program and a cognitive-behavioral change program. *Id.*

13

authority. See *United States* v. *Dorcely*, 454 F.3d 366, 375 (D.C. Cir.) ("carefully considered language of the [United States] Supreme Court, even if technically dictum, generally must be treated as authoritative" [internal quotation marks omitted]), cert. denied, 549 U.S. 1055, 127 S. Ct. 691, 166 L. Ed. 2d 518 (2006). This is especially so in this case, in which we consider a federal constitutional claim.

It is true that the Supreme Court granted certiorari in *Montgomery* to determine only whether the court had jurisdiction over the defendant's claim and whether *Miller* applied retroactively. *Montgomery* v. *Louisiana*, supra, 136 S. Ct. at 725, 727. The court, though, had to have recognized that *Miller*'s retroactive application would potentially affect thousands of cases across several states and that the logical extension of its holding would require state legislatures and courts to fashion a constitutionally adequate remedy for sentences that violated *Miller*. It thus is illogical to categorize *Montgomery*'s conclusion that *Miller* applies retroactively as the holding of the court, but its pronouncement of a constitutionally adequate remedy in light of *Miller*'s retroactive application as not being germane to that holding, and, thus, mere dicta. We do not believe that the United States Supreme Court would so glibly identify a constitutionally adequate remedy under the eighth amendment. Moreover, as noted, the court in *Montgomery* stated unequivocally that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery* v. *Louisiana*, supra, 736. The court could hardly have been clearer. We conclude that parole eligibility is an adequate remedy for sentences that violated *Miller* as applied retroactively.

167 Conn. App. 744, 764-65, 144 A.3d 467 (2016) (most alterations in original) (citations omitted). We agree.

Finally, Scott raises a new argument in his supplemental brief, asserting that the Court of Appeals decision conflicts with *State* v. *Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980). *Fain* is distinguishable. In *Fain*, the defendant had written unauthorized checks, depriving his victims of a total of less than $407, but as an habitual offender he received a life sentence. *Id.* at 401. This court held that the defendant's life sentence as an habitual offender was disproportionate under the Washington Constitution. *Id.* at 402. *Fain* is

simply too different to have any impact on the present case. It was decided on state constitutional grounds, but here the state constitution has not been asserted. The *Fain* court noted particularly that any parole possibility in that case was highly speculative, *see id.* at 394-95, but here RCW 9.94A.730 provides a specific right to petition and a presumption of early release, and imposes a standard for the ISRB to apply. *See* RCW 9.94A.730(3). And finally, this case concerns a *Miller* violation of the Eighth Amendment. "The United States Supreme Court is the ultimate authority on the requirements of the federal constitution, and has emphasized that parole eligibility is a constitutionally adequate remedy for sentences that violate *Miller* in light of that case's retroactive application." *Williams-Bey*, 167 Conn. App. at 767-68.

## CONCLUSION

The Court of Appeals reversal of the trial court order granting a new sentencing hearing is affirmed because Scott has an adequate remedy as directed by the Supreme Court in *Montgomery*—he may seek early release under RCW 9.94A.730. Because he has an adequate remedy, collateral relief via a personal restraint petition is not available under RAP 16.4(d). Accordingly, we affirm the reversal of the trial court's order.

_Madsen, J._

WE CONCUR:

_Wiggin, J._

No. 94020-7

FAIRHURST, C.J. (concurring)—I agree with the majority that the parole

provision of RCW 9.94A.730 is an adequate remedy for a *Miller*[1] violation. Majority

at 1. In *Miller*, the United States Supreme Court built on its prior decisions in *Roper*[2]

and *Graham*,[3] concluding that "'mandatory life-without-parole sentences for

juveniles violate the Eighth Amendment.'" Majority at 7 (quoting *Miller*, 567 U.S.

at 470); U.S. CONST. amend. VIII. I may be overstating the obvious, but *Miller* does

not control the interpretation of article I, section 14 of our state constitution. *See*

*State v. Bartholomew*, 101 Wn.2d 631, 639, 683 P.2d 1079 (1984) (our interpretation

of article I, section 14 "is not constrained to the Supreme Court's interpretation" of

the Eighth Amendment); *State v. Roberts*, 142 Wn.2d 471, 506, 14 P.3d 713 (2001)

(we have "repeated[ly] recogni[zed] that the Washington State Constitution's cruel

---

[1] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).
[2] *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).
[3] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

punishment clause often provides greater protection than the Eighth Amendment"). And for that reason, I write separately to clarify the *Fain*[4] issue.

In his supplemental brief, Jai'Mar Eli Scott raised a new argument that *Fain* controls, and the Court of Appeals decision effectively overturned that case. First, the majority fails to acknowledge that "this court will generally not address arguments raised for the first time in a supplemental brief." *Cummins v. Lewis County*, 156 Wn.2d 844, 851, 133 P.3d 458 (2006). Instead, the majority distinguishes *Fain*. Majority at 14. I would follow our general rule and refrain from addressing Scott's *Fain* argument entirely. As such, I agree with Justice Gordon McCloud that we have an "open question under Washington law" as to whether "the possibility of parole after 20 years rather than the certainty of a full resentencing" comports with article I, section 14. Concurrence at 2. Justice Gordon McCloud proceeds to answer that "open question." I refrain from doing so because the argument is not properly before us.

---

[4] *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980).

2

Fairhurst. C.J.

No. 94020-7

GORDON McCLOUD, J. (concurring)—The majority holds that Jai'Mar

Scott's de facto life sentence is unconstitutional under *Miller v. Alabama*, 567 U.S.

460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Majority at 9-10 & n.7. I agree.

The majority also holds that Scott's challenge to his unconstitutional sentence

was timely, and that *Miller*'s Eighth Amendment protections constitute a significant

change in the law that is retroactively applicable to *Scott* and material to his sentence.

*Id.* at 5, 9-10; U.S. CONST. amend. VIII. I agree with that also.

The majority denies Scott relief for a different reason. A personal restraint

petition may be granted only when there is no other adequate relief available. RAP

16.4. The majority concludes that under current Eighth Amendment precedent,

RCW 9.94A.730—which provides Scott with a chance for parole rather than a right

to resentencing—provides an adequate remedy for the *Miller* violation. *Id.* at 1. I

agree with that conclusion also.

But we have "repeated[ly] recogni[zed]" that the Washington Constitution's

article I, section 14 is more protective of individual rights at sentencing than the

1

Eighth Amendment. *State v. Roberts*, 142 Wn.2d 471, 506, 14 P.3d 713 (2006). The majority does not address the impact of our more protective article I, section 14 on this case at all. Instead, it asserts that Scott did not properly present a state constitutional argument. Majority at 14.

The majority is correct about that too. Despite the fact that amicus briefs filed in support of Scott's position did address that issue, the majority certainly has the discretion to decline to reach arguments raised solely by amici.[1]

I therefore write to clarify that the adequacy of the statutory remedy available to Scott—the possibility of parole after 20 years rather than the certainty of a full resentencing now—remains an open question under Washington law. This is important because our court has held that any *Miller* "fix" must include an individualized hearing *and* "'take into account how children are different [from adults].'"[2] *See State v. Ramos*, 187 Wn.2d 420, 428, 387 P.3d 650 (quoting *Miller*, 567 U.S. at 480), *cert. denied*, 138 S. Ct. 467 (2017). RCW 9.94A.730 fails to provide those two requirements—it does not give the offender a resentencing

---

[1] *State v. Duncan*, 185 Wn.2d 430, 440, 374 P.3d 83 (2016) (citing *Dragonslayer, Inc. v. Wash. State Gambling Comm'n*, 139 Wn. App. 433, 442, 161 P.3d 428 (2007) (citing *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 272 n.1, 943 P.2d 1378 (1997))).

[2] *In re Pers. Restraint of McNeil*, 181 Wn.2d 582, 588-89, 334 P.3d 548 (2014) (citing LAWS OF 2014, ch. 130, § 9(3)(b)).

hearing, and it provides no similar forum for a judge to evaluate the offender's age-related deficits at the time of the crime. The result of the majority's limited Eighth Amendment approach is that juveniles convicted of aggravated first degree murder[3] get more protections post-*Miller* than juveniles, like Scott, who were convicted of lesser crimes—and that result would likely change under our own state's law.

I therefore respectfully concur.

ANALYSIS

**RCW 9.94A.730, the legislature's *Miller* "fix" applicable to nonaggravated murder offenses, is not an "adequate" remedy under Washington law**

The Eighth Amendment to the United States Constitution compels us to recognize that children are different. *See, e.g., Miller,* 567 U.S. at 480; *Graham v. Florida,* 560 U.S. 48, 68-70, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *Roper v. Simmons,* 543 U.S. 551, 569-70, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); *State v. Houston-Sconiers,* 188 Wn.2d 1, 18, 391 P.3d 409 (2017); *Ramos,* 187 Wn.2d at 428. In *Houston-Sconiers,* we noted that the United States Supreme Court has "explained how the courts must address those differences in order to comply with

---

[3] *Id.* at 589 ("Any juvenile offender who was given a mandatory sentence of life without the possibility of early release before the *Miller* fix became effective is automatically entitled to resentencing consistent with the new guidelines." (citing LAWS OF 2014, ch. 130, § 11(1))).

3

the Eighth Amendment: with discretion to consider the mitigating qualities of youth."[4] Based on this line of cases, we explained,

> These cases make two substantive rules of law clear: first, "that a sentencing rule permissible for adults may not be so for children," [*Roper*, 543 U.S. at 481], rendering certain sentences that are routinely imposed on adults disproportionately too harsh when applied to youth, and second, that the Eighth Amendment requires another protection, besides numerical proportionality, in juvenile sentencing—the exercise of discretion.

*Houston-Sconiers*, 188 Wn.2d at 19 n.4. But our own constitution and case law require more than the framework offered by RCW 9.94A.730.

> *A. Under* State v. Fain,[5] *the opportunity for parole cannot cure an unconstitutional sentence*

The first reason that our own constitution and case law compel a different result from that provided by the Eighth Amendment is our holding in *Fain*. RCW 9.94A.730 gives the offender the chance to ask the Indeterminate Sentence Review Board (ISRB)—basically a parole board—for release—basically parole. But *Fain* holds that the possibility of parole cannot be considered akin to a real resentencing under our state constitution.

In *Fain*, the defendant argued that his mandatory life sentence was unconstitutionally disproportionate to his nonviolent crimes. The State responded by

---

[4] 188 Wn.2d at 19 & n.4.

[5] 94 Wn.2d 387, 617 P.2d 720 (1980).

4

arguing that this court should treat a sentence of life with the possibility of parole as a lesser (and more proportionate) sentence than a sentence of life without parole because the former provides for "the availability of parole and 'good behavior' credits." 94 Wn.2d at 393 (citing RCW 9.95.110, .070). This court rejected the State's distinction because "[i]t is clear to us that 'parole is simply an act of executive grace.'" *Id.* at 394 (quoting *Rummel v. Estelle*, 445 U.S. 263, 293, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) (Powell, J., dissenting)). We continued by explaining that "[a] prisoner has no right to parole, which is merely a privilege granted by the administrative body."[6] Thus, for purposes of our analysis, Scott's sentence, like Fain's sentence, must be treated as a true life sentence. *Id.* at 395.

Following *Fain*, the majority's argument that RCW 9.94A.730 provides Scott with a "de facto lifetime prison term *with the possibility of parole*," majority at 8, is irrelevant under state law. RCW 9.94A.730 provides no more than a possibility of

---

[6] *Id.* at 394 (citing *January v. Porter*, 75 Wn.2d 768, 774, 453 P.2d 876 (1969) (parole decision not subject to judicial review); *In re Application of Lindsey*, 33 Wn.2d 94, 104-05, 204 P.2d 482 (1949); *In re Pers. Restraint of LaLande*, 21 Wn. App. 378, 380, 585 P.2d 180) (1978). The Supreme Court has also recognized this principle. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104, 60 L. Ed. 2d 668 (1979) ('There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'); *Morrissey v. Brewer*, 408 U.S. 471, 482 n.8, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (an individual's mere anticipation or hope of freedom is not as important as his justifiable reliance in maintaining his conditional release on parole). *And see Rummel v. Estelle*, 587 F.2d 651, 665 (5th Cir. 1978) (Clark, J., dissenting), *aff'd*, 445 U.S. 263.)).

5

parole, an act of executive privilege, and it therefore "'creates an unacceptable risk' that a substantive constitutional rule will be violated." *Ramos*, 187 Wn.2d at 442 (quoting *Hall v. Florida*, 572 U.S. ___, 134 S. Ct. 1986, 1990, 188 L. Ed. 2d 1007 (2014)).

> B. *Under* In re Personal Restraint of McNeil,[7] Miller *"fixes" must include both substantive and procedural requirements to be adequate*

Further, our prior decisions make clear that *Miller* "fixes" must include both substantive and procedural protections. *Ramos* and *Houston-Sconiers* emphasized these two protections—those decisions explain both the constitutional limits on sentence length[8] and the constitutionally required discretion in the consideration of mitigating factors.[9]

---

[7] 181 Wn.2d 582, 334 P.3d 548 (2014).

[8] "The [United States Supreme] Court held that *Miller* announced a substantive rule that 'life without parole [is] an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders whose crimes reflect the transient immaturity of youth.'" *Ramos* 187 Wn.2d at 441 (second alteration in original) (quoting *Montgomery*, 136 S. Ct. at 734 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989))).

[9] "[I]t is clear that in order to give effect to *Miller*'s substantive holding, every case where a juvenile offender faces a standard range sentence of life without parole (or its functional equivalent) necessarily requires a *Miller* hearing." *Id.* at 443.

"[T]he Eighth Amendment requires trial courts to exercise . . . discretion [to consider the mitigating qualities of youth] whether the youth is sentenced in juvenile or adult court and whether the transfer to adult court is discretionary or mandatory." *Houston-Sconiers*, 188 Wn.2d at 19-20 (citing *Miller*, 132 S. Ct. at 2461-62; *Graham*, 560 U.S. at 53; *Roper*, 543 U.S. at 557).

We explained the importance of incorporating both constitutional requirements into any *Miller* "fix" type of resentencing in *McNeil*. *McNeil* addressed one of the legislature's two *Miller* "fixes"—RCW 10.95.030(3). RCW 10.95.030(3) describes the initial sentencing procedure for certain juveniles convicted of aggravated murder. RCW 10.95.035(1) makes this *Miller* "fix" fully retroactive and applicable to resentencing. *See McNeil*, 181 Wn.2d at 591 (citing LAWS OF 2014, ch. 130, § 11(1)).

In *McNeil*, two juveniles were tried as adults and convicted of aggravated first degree murder. Both were given the mandatory minimum of life in prison without the possibility of early release, and both challenged that sentence based on *Miller*. *Id.* at 585. Like the majority in this case, *McNeil* held that "[t]he *Miller* fix remedies the unlawfulness of the petitioners' sentences by providing they must be resentenced in a manner that does not violate the Eighth Amendment, consistent with *Miller*." *Id.* at 590.

But the *McNeil*-referenced *Miller* "fix," RCW 10.95.030(3) (sentences for aggravated first degree murder), differs significantly from RCW 9.94A.730, the "fix" statute at issue here. The RCW 10.95.030(3) *Miller* "fix" is far more protective of the defendant's constitutional rights. RCW 10.95.030(3) states in relevant part,

> (a)(i) Any person convicted of the crime of aggravated first degree murder for an offense committed prior to the person's sixteenth

birthday shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of twenty-five years.

(ii) Any person convicted of the crime of aggravated first degree murder for an offense committed when the person is at least sixteen years old but less than eighteen years old shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of no less than twenty-five years. A minimum term of life may be imposed, in which case the person will be ineligible for parole or early release.

(b) In setting a minimum term, the court *must take into account mitigating factors that account for the diminished culpability of youth as provided in* Miller v. Alabama, 132 S.Ct. 2455 (2012) including, but not limited to, the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated.

(Emphasis added.) As the emphasized language shows, this RCW 10.95.030(3) *Miller* "fix," unlike the RCW 9.94A.730 *Miller* "fix" at issue here, specifically incorporates *Miller*'s requirements—both substantive and procedural—by providing a limit on the sentence length and by requiring that a sentencing "court"—not parole board—must "take into account mitigating factors that account for the diminished culpability of youth." RCW 10.05.030(3)(b).

Unlike McNeil, who was convicted of aggravated first degree murder, Scott was convicted of the less serious crime of first degree murder. *See State v. Scott*, 72 Wn. App. 207, 210, 866 P.2d 1258 (1993). He is therefore eligible for the *Miller* "fix" of RCW 9.94A.730—rather than the *Miller* "fix" of RCW 10.95.030(3). RCW

8

9.94A.730 (early release for persons convicted of one or more crimes committed prior to 18th birthday) details a very different *Miller* "fix," stating,

> (1)   Notwithstanding any other provision of this chapter, any person convicted of one or more crimes committed prior to the person's eighteenth birthday may petition the indeterminate sentence review board for early release after serving no less than twenty years total confinement, provided the person has not been convicted for any crime committed subsequent to the person's eighteenth birthday, the person has not committed a disqualifying serious infraction as defined by the department in the twelve months prior to filing the petition for early release, and the current sentence was not imposed under RCW 10.95.030 or 9.94A.507.
>
>    . . . .
>
> (3) No later than one hundred eighty days from receipt of the petition for early release, the department shall conduct, and the offender shall participate in, an examination of the person, incorporating methodologies that are recognized by experts in the prediction of dangerousness, and including a prediction of the probability that the person will engage in future criminal behavior if released on conditions to be set by the board. The board may consider a person's failure to participate in an evaluation under this subsection in determining whether to release the person. The board shall order the person released under such affirmative and other conditions as the board determines appropriate, unless the board determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the person will commit new criminal law violations if released. The board shall give public safety considerations the highest priority when making all discretionary decisions regarding the ability for release and conditions of release.

Obviously, this does not provide for a "resentencing" in a "court," with consideration of *Miller* factors, as RCW 10.95.030(3) (which applies to aggravated first degree murderers) does.

But our Washington cases do not require one set of heightened protections for juveniles committing aggravated first degree murders and a lesser set of protections for juveniles committing less culpable murderers. Instead, our state case law holds that in both cases, "'a sentencer follow[s] a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty.'" *McNeil*, 181 Wn.2d at 588 (quoting *Miller*, 567 U.S. at 483). As we held in *McNeil*, the legislature met the requirements of *Miller* in its enactment of RCW 10.95.030(3)—*because of the full resentencing requirements discussed above*. 181 Wn.2d at 590. The legislative "fix" available to Scott, in contrast, fails to meet this standard. *See* RCW 9.94A.730. There is no resentencing requirement in RCW 9.94A.730, the review is not conducted by a court, and, most importantly, the ISRB is not required to consider the offender's youth and its characteristics. *Compare* RCW 9.94A.730, *with* RCW 10.95.030(3).

> *C. The United States Supreme Court's holdings in* Miller *and* Montgomery *do not bar this postconviction remedy*

As noted by the majority, the *Montgomery* Court cited with approval a post-*Miller* Wyoming statute that permitted juvenile homicide offenders to be considered

10

for parole after 25 years, rather than requiring resentencing. 136 S. Ct. at 736 (citing WYO. STAT. ANN. § 6-10-301); majority at 11. The Court's brief reference to the Wyoming statute, however, was dictum. The questions presented for review in *Montgomery* were (1) "Did *Miller v. Alabama*, 132 S. Ct. 2455 (2012) adopt a new substantive rule that applies retroactively to cases on collateral review" and (2) "[d]oes this Court have jurisdiction to decide whether the Supreme Court of Louisiana correctly refused to give retroactive effect in this case to this Court's decision in *Miller v. Alabama*?" Br. of Pet'r, *Montgomery v. Louisiana*, No. 14-280, at i (U.S. July 22, 2015). The respondent phrased the questions slightly differently. But neither party presented—and the Court did not accept review of—the question of a specific state's statutory compliance with *Miller*.

Further, Washington courts would not be bound by the United States Supreme Court's statement about available state court remedies even if it were not dictum. This is clear from *Danforth v. Minnesota*, in which the United States Supreme Court stated that its limitations on the availability of relief for violations of new rules of constitutional law do not "limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions." 552 U.S. 264, 280-81, 128 S. Ct. 1029, 169 L. Ed. 2d 859 (2008). And our state's constitution and case law, described above, states that Washington requires more

11

than the *Montgomery* dictum does. Thus, under Washington law, RCW 9.94A.730 does not provide adequate protections.

## CONCLUSION

I agree with the majority's conclusion that under the Eighth Amendment, RCW 9.94A.730 is constitutionally adequate. But over the almost 30-year history of this case, Scott's youthfulness has never been considered as a mitigating factor. RCW 9.94A.730 does not provide for the *Fain and McNeil* compliant resentencing that would remedy this constitutional problem. For that reason, it is not an adequate "fix" for that problem under our state constitution and case law.

I therefore concur.

_____
Gordon McCloud, J.

Yu, J.

González, J.

13